The Chancellor.
The testator first gives to his aunt, Ann P. White, (who, he says, has acted the part of a kind and devoted mother,) the sum of $10,000, to be paid to her as soon as practicable after his decease, or with interest from that time; and then gives a number of pecuniary legacies, and certain specific legacies. Then follows, this clause: “My Bank stock I wish to make a part of my dear aunt’s legacy, as they will give her less trouble in collecting.” He then gives certain other specific legacies; and gives all the remainder of his property, real and personal, to his four cousins, Job, Robert, George and John *179 White. Then follows this clause: “I wish that the house I have lately purchased of C. M. Campbell, valued at $4,000, be a part of my dear aunt’s legacy, and that in the division of her portion, my Trenton Bank be calculated at $40 per share, and my Easton Bank at $30 per share.’
By a codicil to his will he gives to his aunt, Ann P. White, in fee, a lot of woodland, of fifteen acres, and all the provisions, and vessels containing the same, that might be in the house where he resided, two pigs, one cow, and all the plate in his house; and then gives three other small pecuniary legacies.
The personal estate, after paying the debts and funeral and testamentary expenses, is insufficient to pay the pecuniary legacies in full.
The master has reported that under the several clauses of the will in favor of Ann P. White, above stated, the gifts made to her should be considered in the light of a pecuniary legacy of $10,000, and should be subject to an abatement, on that sum, rateably with the other pecuniary legacies; which abatement would reduce what she is to receive to $6,900; and that she should take the Campbell house and lot as $4,000 of this $6,900, and the bank stock, at the valuations fixed thereon by the testator in his will, as so much more of this $6,900. The Trenton bank stock is appraised, in the inventory, at $30 a share, instead of $40, the valuation fixed thereon by the will; and the Easton bank stock is appraised at $30 a share, the same .as the valuation thereof fixed by the will.
I agree with the master that, under the before stated clauses of this will, Ann P. White is to take the Campbell house and lot, at $4,000, and the bank stock at the valuations thereof fixed by the will, as part of the $10,000, mentioned in the first of the said clauses. But the master has come to the conclusion on the question of abatement to which I have not been able to assent.
As to the house and lot, it seems clear to me that the principle adopted by the master would not be just or reasonable. By the first of these clauses, the testator had given to A. P. White a pecuniary legacy of $10,000. If he had made no change in this respect, the rateable proportion of this whole sum would *180 have been taken from the personal estate, and the other pecuniary legatees would have received proportionably smaller dividends on the legacies to them. The testator, afterwards, gives her a house and lot, at a fixed value, as part of, that is, instead of so much of the $10,000. This relieves the personal estate of so much of the $10,000, to the benefit, to that extent, of the pecuniary legatees. I cannot see with what propriety the pecuniary legatees can claim that this house and lot, or the value at which it was given to her by the testator, in relief of the personal estate, to that extent, in favor of the legatees out of the personal estate, shall be subject to abatement. If he had given her a house and lot valued at $10,000, instead of the said legacy, it would not be claimed that the house, or the value thereof, was subject to abatement. By what rule can it be claimed that a house and lot given instead of part of said legacy, must abate? The principle might lead to strange consequences. If an abatement of 75 instead of 31 per cent., had been necessary, A. P. White, on the principle adopted by the master, would have been obliged to pay $1,500 to get a house and lot given her by the testator.
As to the bank stock, I am of opinion, also, that neither the stock nor the amount of the valuations thereof, is subject to abatement. I will not enter upon a review of the numerous decisions on the subject of specific and demonstrative legacies. No case was cited, nor have I found any that affords much aid in the consideration of the question discussed as arising under this will.
The will bequeaths to Ann P. White the stock. This is so considered by the master; for he gives it to her; and that, at the valuation fixed by the testator, though the appraised value of a part of it is $10 less per share. The argument in favor of the report is that the stock, or the testator’s valuation of it, should be subject to abatement, because it is given as part of the $10,000, given as a pecuniary legacy in a former part of the will. In my view, we are to read the will according to the idea or intention the testator must be supposed to have had when the subsequent provisions of it in favor of Ann P. White were made. Clearly a new and different idea prevailed with him, at this point *181 of time, from that which he had when the first clause was dictated, giving her a money legacy of $10,000. At this point of time, he certainly intended to give, and did give to her, the house and lot and the hank stock ; and his calling them a part of her legacy of $10,000 was simply because he had at first intended to give, and given her, a money legacy of that amount.
We can hardly suppose that if the last intention had existed at the time he gave the pecuniary legacy of $10,000, the language of the will would have been the same it now is. It can hardly be supposed he would have begun by saying “I give Ann P. White the sum of $10,000.” But if he had, and had then Immediately added that ho gave her the house and lot as part of it, and his bank stock, at fixed valuations, as another part of it, would it be any the less a gift to her of the house and the hank stock ?
The report of the master must be corrected in these particulars.
Order accordingly.